## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Dave Shackleford,<br><br>                Plaintiff,<br><br>v.<br><br>Andrew Saul, Commissioner of Social Security,<br><br>                Defendant. | Civil No. 3:19-cv-01278-TOF<br><br><br><br><br><br>July 10, 2020 |

### RULING ON PENDING MOTIONS

The Plaintiff, Dave Shackleford, appeals the final decision of the Defendant, Andrew Saul, Commissioner of Social Security ("the Commissioner"), on his applications for Title II Social Security Disability benefits and for Title XVI Supplemental Security Income benefits. This appeal is brought pursuant to 42 U.S.C. § 405(g). Currently pending are the Plaintiff's motion to reverse and remand for an award and calculation of benefits, or in the alternative, for an order reversing and remanding for a new hearing (ECF No. 14) and the Defendant's motion to affirm the decision of the Commissioner. (ECF No. 24.) For the reasons explained below, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but his alternative motion to reverse and remand for a new hearing is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this decision.

The parties principally dispute whether the Administrative Law Judge ("ALJ") erred by failing to adequately develop the record. Specifically, the Plaintiff argues that the ALJ failed to obtain relevant medical records and opinions from his treating healthcare providers. (Pl. Mem.

Law, ECF No. 14-1, at 7-9.)  The Plaintiff also argues that the ALJ committed certain procedural errors with respect to the questioning of the Vocational Expert.  (*Id.* at 10.)  The Defendant responds that the ALJ was not required to obtain the medical records and no treating source opinions were required because substantial evidence supports the RFC determination.  (Def. Mem. Law, ECF No. 24-1, at 5, 10.)  Central to this appeal, is that the Plaintiff proceeded *pro se* during the benefits hearing.

The Court agrees with the Plaintiff that the ALJ failed to develop the record by not obtaining certain relevant medical records and treating source opinions.  The Court will therefore remand the case for rehearing, as discussed more fully in Section III below.

## I.  APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To determine whether a claimant is disabled, the ALJ must follow a five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a "residual functional capacity" assessment to determine whether the claimant can perform any of her "past relevant work . . . ."

*Id*.  At Step Five, the ALJ assesses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).  The decision is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner.  *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (internal citations omitted).  Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The Commissioner's conclusions of law are not entitled to the same deference.  The Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "either remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 263 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (remanding for rehearing but directing Commissioner "to calculate and dispense SSI benefits" if he could not bear his burden at Step Five).  Remand for calculation of benefits is not appropriate when the record requires further development.  "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999).

## II.   BACKGROUND

### a.   Facts and Procedural History

On August 29, 2016, the Plaintiff submitted concurrent applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI").  (R. 248, 250.)  He alleged a disability onset date of January 15, 2015 (*id.*), claiming he could not work because of "leg concerns" and "diabetes."  (R. 108.)  He later expanded this to include back pain, abdominal pain and head pain.  (*Id.*)  The Social Security Administration ("SSA") denied his applications and subsequent requests for reconsideration.  (R. 114, 124, 131, 141.)  The Plaintiff then requested a hearing before an ALJ.  (R. 166.)

The Plaintiff's matter was heard by ALJ Deirdre R. Horton.  On March 21, 2018 the hearing briefly commenced, but was continued to provide the Plaintiff with time to find an attorney.  (R. 60, 63-64.)  Before adjourning, the Plaintiff informed the ALJ that certain recent medical treatment records appeared to be missing from the file and provided her with the relevant details.  (R. 62-67.)  The Plaintiff appeared *pro se* when the hearing resumed on July 25, 2018.  (R. 70, 72-73.)  On August 8, 2018, the ALJ delivered an unfavorable decision.  (R. 19.)  The Plaintiff, then represented by counsel, submitted an appeal to the Appeals Council.  (R. 245.)  The Appeals Council affirmed the ALJ's decision, (R. 1-3) and the Plaintiff timely appealed to this Court.  He filed a motion to reverse and/or remand on December 16, 2019.  (ECF No. 14.)  The Defendant filed its motion to affirm on April 28, 2020.  (ECF No. 24.)

Portions of the Plaintiff's medical history will be set forth below, as necessary to explain the Court's decision.

### b.   The ALJ's Decision

At Step One, the ALJ found that the claimant has not engaged in substantial gainful activity since the alleged onset date of January 15, 2015.  (R. 14.)  At Step Two, the ALJ found that the Plaintiff suffered from the severe impairment of mild degenerative disc disease of the lumbar spine and the non-severe impairment of diabetes.  (R. 14-15.)  The ALJ also found that the Plaintiff's alleged right leg and knee pain were non-medically determinable impairments.  (R. 15.)  At Step Three, the ALJ found that the Plaintiff's impairments or combination of impairments do not meet or equal a listed disability enumerated in 20 C.F.R. § 404, Subpart P., App. 1.  (*Id.*)  Next, the ALJ determined that the Plaintiff retained the following residual functional capacity:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: can occasionally climb ramps and stairs; no climbing of ladders, ropes, or scaffolds; and can perform occasional balancing, stooping, kneeling, crouching, and crawling.

(R. 15, 15-17.)

At Step Four, the ALJ Found that the Plaintiff cannot perform his past relevant work.  (R. 17.)  Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in the national economy that the Plaintiff can perform, including "fast food" worker, "Cashier II" and "price marker."  (R. 18-19.)  Accordingly, the ALJ determined that the Plaintiff was not disabled from the alleged onset date of January 15, 2015.  (R. 19.)

## III.   **DISCUSSION**

The Plaintiff argues that the ALJ erred in three ways: (1) failing to develop the record by not obtaining relevant treatment records;  (2) failing to develop the record by not obtaining opinion evidence from his treating physicians; and (3) committing certain procedural errors with respect to the questioning of the Vocational Expert.  (ECF No. 14-1, at 7-10.)  For the following reasons, the Court finds that the ALJ failed to develop the record by not obtaining certain treatment records

and by not obtaining medical source opinions.  Therefore, the Court reverses and remands the Commissioner's decision without addressing the remaining arguments.

### a.  The ALJ's Failure to Obtain Relevant Medical Records

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record.  "[T]he Commissioner of Social Security . . .  shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record").  An ALJ's failure to comply with this mandate is legal error.  *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).  However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ "possesses [the claimant's] complete medical history" and there are no "obvious gaps or inconsistencies" in the record.  *Rosa*, 168 F.3d at 79 (internal quotation marks omitted).

The duty to develop the record is "heightened" when a claimant "waives his right to counsel and proceeds *pro se*." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation marks omitted).  This is because the ALJ "must adequately protect" the rights of a *pro se* claimant.  *Id*. The ALJ's heightened duty requires her to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (summary order) ("When a disability benefits claimant appears *pro se*, the ALJ must 'ensur[e] that all of the relevant facts are sufficiently developed and considered.'") (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  On appeal, the district court must undertake a "searching

investigation of the record" to ensure that the rights of the *pro se* claimant were protected.  *Cruz*, 912 F.2d at 11.

The Plaintiff argues that the ALJ should have obtained four sets of medical records: (1) records from 2015-2016 generally, and in particular, those records related to an abscess on his right hip and subsequent problems with his right leg; (2) Stamford Hospital records for treatment received in the period between and shortly after the two disability hearings; (3) treatment records from Centro Medico Latino and Dr. Sergio Martinez; and (4) 2015 records from St. Joseph Medical Center in Yonkers, N.Y.  (ECF No. 14-1, at 8.).[1]  The Defendant responds that the ALJ was not required to obtain records from 2015-2016 because the Plaintiff failed to comply with the "five-day" rule.  (ECF No. 24-1, at 7-10.)

The Court will address each of these categories of records in turn.

### i. 2015-2016 Treatment Records

There is a clear gap in the record with respect to the Plaintiff's treatment for an abscess and associated right leg pain in 2015.  There do not appear to be any records specific to this claimed impairment or records in general from the period of January 2015 until December 2016.  (*See* R. 390) (earliest medical record in administrative record, dated December 12, 2016).  On at least two separate occasions, the Plaintiff notified the Commissioner about the existence of medical records from 2015.  On May 14, 2017, the Plaintiff notified the SSA that records from treatment in January 2015 were available at St. Joseph's Hospital in Yonkers, N.Y.  (R. 343.)  Although the Plaintiff did not explicitly state that these records were related to the abscess and right leg injuries, this would be a fair inference given the timing of the treatment in relation to his alleged onset of

---

[1]     Contextually, it appears that the first and fourth sets of records overlap.  The Court will address both sets of records together.

disability.  On July 20, 2018, the Plaintiff presented to the Stamford field office of the SSA and again reported that he was seen at St. Joseph's in 2015 for an injured right leg.  (R. 24.)  Despite this, it does not appear that any record requests were ever sent to St. Joseph's.

The ALJ discussed the Plaintiff's right leg problems at Step Two, where she found that they did not amount to a medically determinable impairment.  (R. 15.)  The ALJ cited to a single treatment note from March 10, 2017 to support this finding.  (R. 411-14.)  There is no other discussion of treatment the Plaintiff received for his leg from the alleged onset of disability in January 2015 through the time of the decision.  (R. 15-7.)  During the hearing, the ALJ did not ask the Plaintiff about treatment for the right leg impairment, despite the Plaintiff's testimony about the abscess and resulting complications.  (R. 76, 86, 90-91, 96-97.)  *See Alford v. Saul*, 417 F. Supp. 3d 125, 142 (D. Conn. 2019) (finding that the record was "insufficiently developed" and that "the ALJ did not remedy this insufficiency at the hearing" by adequately questioning the claimant) (citing *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) (stating that the duty to develop the record includes questioning the claimant during the benefits hearing)).

The ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Echevarria*, 685 F.2d at 755, related to the Plaintiff's abscess and alleged right leg impairment.  Remand is therefore warranted because the ALJ did not comply with the "heightened" duty owed to *pro se* claimants.  On remand, the ALJ shall: (1) seek treatment records from St. Joseph's Hospital in Yonkers, N.Y.; (2) determine whether the Plaintiff received any other treatment related to the abscess and alleged right leg impairment, and if so, seek those records; and (3) determine whether the Plaintiff received treatment from any other medical providers during the relevant period, such that she can develop a "complete medical history" consistent with the ALJ's statutory and regulatory obligations.

### ii.  Recent Stamford Hospital Records

The Plaintiff claims that there are "no files in the record after March 28, 2018, and even those notes appear incomplete." (ECF No. 14-1, at 7-8) (referencing R. 727.)  The Plaintiff argues that the ALJ should have obtained records after March 28, 2018, referencing "two back procedures" that occurred in the weeks prior to the July 2018 hearing and his hearing testimony about an upcoming injection.  (*Id*. at 7.)

At the time of the benefits hearings, it appears the only treatment Plaintiff received at Stamford Hospital were pain-management injections every two-to-three weeks and ongoing physical therapy sessions.  (R. 95, 739-45, 755-56.)  The Plaintiff does not raise any arguments as to the significance of these records, nor does he suggest that they contain anything beyond what the ALJ considered in her decision.  (R. 16.)  Therefore, the recent treatment records from Stamford Hospital do not form an independent basis for remand.

### iii.  Dr. Sergio Martinez and Centro Medico Latino

The Plaintiff argues that the ALJ should have obtained records from Dr. Sergio Martinez and Centro Medico Latino.  (ECF No. 14-1, at 8.)  Here, too, the Plaintiff fails to specify the significance of these records. Contextually, it appears that Dr. Martinez may have treated the Plaintiff for diabetes (R. 293), which is currently being treated by his primary care provider, APRN Donna Wallace.  (R. 390, 715-26.)  It is unclear whether the Plaintiff received other treatment from Dr. Martinez and/or Centro Medico Latino, i.e. related to his right leg problems, back pain, head pain, and abdominal pain that he alleged.  The Court cannot find that the ALJ's failure to obtain these records was error.  Because this matter is being remanded on other grounds, however, the ALJ may consider whether these treatment records should be obtained.  *See*, Section III(a)(i), *supra*.

### iv. The "Five-Day Rule" Does not Eliminate the ALJ's Duty to Develop the Record

Effective January 2017, the Commissioner's regulations require a claimant to submit or inform the ALJ of written evidence no later than five business days before the benefits hearing. 20 C.F.R. § 404.935(a); 20 C.F.R. § 416.1435(a).  If a claimant fails to comply with the five-day rule, an ALJ "may decline to consider or obtain" the evidence unless certain circumstances are present.  *Id.*  The regulations identify three exceptions to the five day rule: (1) the action "misled" the claimant; (2) a "physical, mental, educational, or linguistic limitation" prevented the claimant from disclosing or submitting evidence; or (3) some other "unusual, unexpected or unavoidable circumstance" beyond the claimant's control prevented disclosure or submission of the evidence. 20 C.F.R. § 404.935(b); 20 C.F.R. 416.1435(b).  In adopting the five-day rule, the Commissioner specifically sought to "appropriately balance the twin concerns of fairness and efficiency . . . ." *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016).

The five-day rule does not eliminate the ALJ's duty to develop the record and the agency did not change its "longstanding policy of assisting claimants in developing the record."  81 Fed. Reg. 90987, 90989.  Most courts emphasize this concurrent obligation in evaluating challenges to an ALJ's decision to reject evidence based on the five-day rule.  *See, e.g.*, *Whittaker v. Comm'r of Soc. Sec.*, No. 2:18-CV-02697 (AMD), 2020 WL 2933863, at *3 (E.D.N.Y. Jun. 2, 2020) (discussing the five day rule and noting that "[a]t the same time," the "ALJ has a duty to develop the record" and remanding for further development where ALJ discounted treating physician opinion without obtaining underlying records) (collecting cases); *Jefferson v. Berryhill*, No. 18-CV-07425 (AMD), 2020 WL 1323072, at *3 (E.D.N.Y. Mar. 20, 2020) (finding that "[e]ven if the ALJ did not believe the plaintiff" had good cause for violating the five day rule, he still "had an

affirmative duty to develop a complete medical record before making a disability determination");
*Candelaria o/b/o J.L.G.L. v. Saul*, No. 18-CV-0557 (LJV), 2019 WL 4140937, at *6 (W.D.N.Y.
Aug. 30, 2019) (discussing overlap between the five-day rule and the duty to develop the record,
and finding that the ALJ erred in refusing to consider certain records).  The five-day rule also does
not diminish the "heightened" obligation to develop the record applicable to *pro se* claimants.
"The fact that a claimant is homeless or lacks representation . . . . may result in circumstances that
warrant an exception to the 5-day requirement."  81 Fed. Reg. 90987, 90989; *see also Ocasio v.
Comm'r of Soc. Sec.*, No. 18-CV-2472 (KAM), 2020 WL 1989281, at *5–6 (E.D.N.Y. Apr. 25,
2020) (remanding where "ALJ was aware or should already have been aware that the medical
records were outstanding, and therefore should have requested the records" because plaintiff, who
at the time was proceeding *pro se*, submitted a letter to the ALJ less than five days before the
hearing claiming records were outstanding).

In some cases, courts have held that an ALJ was not required to consider evidence
submitted in violation of the five-day rule, because to conclude otherwise "would make that rule
an empty vessel that need not be complied with."  *Arthur L. v. Berryhill*, No. 5:18-CV-0304 (FJS)
(DJS), 2019 WL 4395421, at *4 (N.D.N.Y. Jun. 6, 2019), *report and recommendation adopted
sub nom. Arthur L. v. Saul*, No. 5:18-CV-0304 (FJS) (DJS), 2019 WL 3213229 (N.D.N.Y. Jul. 17,
2019).  However, cases like *Arthur L.* do not fully address the five-day rule in relation to the ALJ's
overarching duty to develop the record.  Although the Second Circuit has yet to reach the question
as to whether and to what extent the five-day rule narrows the ALJ's general duty to develop the
record, the Commissioner's own guidance and the majority of decisions suggest that it does not.
*See Rivera v. Saul*, No. 3:19-CV-00109 (WIG), 2019 WL 4855232, at *5 (D. Conn. Oct. 2, 2019)

(finding the record was insufficiently developed as to treatment records and medical source opinions where ALJ excluded records that were submitted two days before the hearing).

In this case, the Defendant argues that the Plaintiff violated the five-day rule by not informing the ALJ about outstanding medical records from 2015-2016. (ECF 24-1, at 7-10.) The Defendant cites to the fact that during the initial hearing, the Plaintiff identified certain recent treatment records that appeared to be missing from the exhibit list. (*Id.* at 6) (referencing R. 62-67.) Therefore, the Defendant argues, the Plaintiff did not comply with the five-day rule and the ALJ was thus not required to obtain the 2015-16 records. (*Id.* at 8-9.) The Defendant does not cite to any authority to support this proposition except for the operative regulations.

The Court is not persuaded that the five-day rule curtailed the ALJ's obligation to develop the record and seek the Plaintiff's treatment records from 2015-2016. This conclusion is supported by the better-reasoned decisions, which evaluate the five-day rule alongside the ALJ's concurrent duty to develop the record. *See Whittaker*, 2020 WL 2933863, at *2–4; *Rivera*, 2019 WL 4855232, at *5. Even if the strictures of the five-day rule were applicable to this class of records, the Plaintiff would have successfully discharged his obligation to "notify" the ALJ of the missing records "no later than five business days" before the hearing. 20 C.F.R. § 404.935(a); 20 C.F.R. § 416.1435(a). On May 14, 2017, the Plaintiff notified the Commissioner that records were missing from treatment he received in January 2015 at St. Joseph's Hospital in Yonkers, N.Y. (R. 343.) Accordingly, remand is warranted because the ALJ failed to develop the record as explained above.

### b.  The ALJ's Failure to Obtain Treating Source Opinions

The ALJ's duty to develop the record requires that she obtain opinion evidence from a claimant's treating providers. "Indeed, the plain text of the regulation does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement'

containing an opinion regarding the claimant's residual capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (citing 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)).  However, when the record "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *id*. at 34, the failure to obtain medical source opinion evidence is not "*per se* error."  *Sanchez v. Colvin*, No. 13-CIV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015); *see also Sinclair v. Saul*, No. 3:18-CV-00656 (RMS), 2019 WL 3284793, at *7 (D. Conn. Jul. 22, 2019) (same).  Stated differently, when the ALJ possesses an "extensive medical record," the lack of medical opinion evidence does not automatically create an obvious gap in the record that "necessitate[s] remand."  *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order).

The record does not contain "sufficient evidence," *Tankisi*, 521 F. App'x at 34, when the underlying treatment notes lack "nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature" of a claimant's impairments and "their impact on her RFC."  *Sanchez*, 2015 WL 736102 at *8.   In the absence of treating source opinions, remand is required when the records only relate to the diagnosis and treatment of a claimant's medical conditions and "offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life."  *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order).

In this case, the Plaintiff argues that the ALJ "had no reliable opinion evidence on which to rely."  (ECF No. 14-1, at 9.)  The Plaintiff does not specify which opinions should have been obtained, although he does point out that the one treating source – an evaluation by APRN Donna Wallace – was given "no weight" by the ALJ .  (*Id.*) (citing R. 17.)  The Defendant claims this argument is "cursory," but nevertheless responds that the RFC determination was based on

substantial evidence.  (ECF No. 24-1, at 10, 10-13.)  The Court agrees with the Plaintiff.  At a minimum, there is an obvious gap in the record with respect to opinion evidence about the functional limitations related to the Plaintiff's "degenerative disc impairment" and persistent lower back pain.

The Plaintiff's medical records are not "voluminous," *Tankisi*, 521 F. App'x at 34, and do not provide insight into how his lower back impairment "affect[s] or do[es] not affect [his] ability to work, or [his] ability to undertake [his] activities of everyday life."  *Guillen*, 697 F. App'x at 109.  The medical records contain a handful of treatment notes specifically related to back pain, primarily consisting of pain management and physical therapy sessions at Stamford Hospital in 2017 and 2018.  (R. 727, 739, 745, 755-58.)  They also contain diagnostic imaging results, which revealed a "slight diffuse posterior disc bulge from L3 through S1."  (R. 895.)  These images were taken in October 2017 after the Plaintiff was struck by a motor vehicle while crossing the street. (R. 814.)  There are also records from physical therapy sessions, which the Plaintiff began in September 2017 to treat lower back pain.  (R. 910-29.)  These sessions continued after the accident. (R. 798-807.)  Some of the Stamford Hospital records discuss the Plaintiff's range of motion and ability to ambulate.  (R. 919.)  None of the Plaintiff's treating sources at Stamford Hospital provided an assessment of his functional limitations.  The administrative record also contains evidence from the Plaintiff's other medical providers, which reference his ongoing complaints of back pain and a diagnosis of lumbago.  (R. 391, 436, 441.)

The opinion by consulting examiner, Dr. Herbert Reither, also does not support the RFC determination.  In his December 2016 evaluation, Dr. Reither did not diagnose the Plaintiff with degenerative disc disease, but did diagnose him with "back pain" and diabetes.  (R. 374.)  Dr. Reither concluded that the Plaintiff did not have any functional limitations.  (R. 375.)  The ALJ

gave "some weight" to this opinion and cited the diagnostic imaging results and "frequent findings for lumbar tenderness" to conclude that Plaintiff was "slightly more limited than opined by Dr. Reither." (R. 17.) Dr. Reither's opinion does not support the functional limitations determined by the ALJ. This is particularly evident with the list of "postural and climbing restrictions" identified by the ALJ (R. 17), whereas Dr. Reither identified none. *See Stellmaszyk v. Berryhill*, No. 16-CV-09609 (DF), 2018 WL 4997515, at *24 (S.D.N.Y. Sept. 28, 2018) ("[T]he total absence of a functional assessment by any treater, coupled with the lack of a detailed explanation of Plaintiff's physical limitations from any consultative examiner, means that the ALJ could not have had an adequate informational basis from which to determine Plaintiff's RFC.").

The ALJ also addressed the opinions of non-examining state agency consultants. These consultants found that the Plaintiff did not suffer from any severe impairments, and accordingly, did not provide RFC assessments. (R. 113-14, 123, 130-31, 139-40.) The ALJ afforded these opinions "some weight" "[t]o the extent their assessments reflect that the degree of impairment alleged by the claimant is not supported by the medical record . . . ." (R. 17.) Here, the ALJ found that the evidence satisfied the "de minimis standard" to establish the severe impairment of the "claimant's lumbar spine condition." (R. 17.)

As applied to this case, the legal principles in *Tankisi* and *Guillen* support the Plaintiff's argument that the ALJ was required to obtain opinion evidence from his treating providers. As noted above, the underlying medical records are not voluminous and do not contain enough information about the Plaintiff's functional abilities to inform the RFC determination. The opinions of Dr. Reither and the non-examining state agency physicians likewise fail to provide adequate support for the RFC determination.  Remand is therefore warranted. *See Dowling v. Saul*, No. 3:19-CV-01170 (WIG), 2020 WL 2079113, at *7 (D. Conn. Apr. 30, 2020) ("Because

16

there is <u>no</u> medical source opinion or functional assessment supporting the ALJ's finding that [the claimant] can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate.") (collecting cases); *see also Delgado v. Berryhill*, No. 3:17-CV-0054 (JCH), 2018 WL 1316198, at *7 (D. Conn. Mar. 14, 2018) (collecting cases).

On remand, the ALJ shall attempt to obtain opinions from the Plaintiff's treating sources, which address the functional limitations arising from his "degenerative disc disease" or other lower back impairments.  Although not specifically discussed herein, the ALJ may also be required to obtain opinion evidence related to the impairments to Plaintiff's right leg, as alleged in his application for benefits.[2]

### c.  Remaining Arguments

Because the Court is remanding this matter for further development of the record, it does not reach the Plaintiff's remaining arguments. "The issue of whether an ALJ has satisfied his obligation to develop the record is one that must be addressed as a threshold issue." *Camarota v.*

---

[2]      The Plaintiff does not specifically challenge the ALJ's treatment of the "diabetes mellitus medical source statement" prepared by his primary care provider, APRN Donna Wallace. (R. 419-22.) This opinion diagnoses the Plaintiff with diabetes mellitus as well as "back pain" and "right knee pain." (R. 419.) It also provides functional and work-related limitations related to the Plaintiff's impairments. (R. 420.) The ALJ gave that opinion "no weight" because it was "internally inconsistent" and inconsistent with the records. (R. 17.) On remand, the ALJ should recontact APRN Wallace to attempt to resolve any apparent inconsistencies or ambiguities in her opinion. "The duty to develop the record sometimes demands that ALJs re-contact treating sources for clarification." *Edwards v. Berryhill*, No. 3:17-CV-0298 (JCH), 2018 WL 658833, at *8 (D. Conn. Jan. 31, 2018) (collecting cases). The ALJ also found that APRN Wallace was not "an acceptable medical source." (R. 17.) Although technically correct, opinion evidence from an APRN qualifies as evidence from "other medical sources" and the ALJ "should use the same factors as those for evaluating the opinion of a treating physician." *Herrington v. Berryhill*, No. 3:18-CV-0315 (WIG), 2019 WL 1091385, at *3 (D. Conn. Mar. 8, 2019). On remand, the ALJ should clarify the basis for any reduced weight afforded to the opinion of APRN Wallace and evaluate her opinion consistent with the operative regulations.

*Comm'r of Soc. Sec.*, No. 3:19-CV-0133 (RMS), 2020 WL 132437, at *5 (D. Conn. Jan. 13, 2020) (internal quotation marks omitted).  The Court declines to address the plaintiff's remaining arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Faussett v. Saul*, No. 3:18-CV-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (internal quotation marks omitted); *see also Delgado*, 2018 WL 1316198, at *19 (holding that because the case is "already being remanded for other reasons," and "because [the plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis).

On remand, and after further development of the record and a new hearing, the ALJ shall consider the other claims of error not discussed in this decision.  *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein.");  *see also Moreau v. Berryhill*, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

### d.  Nature of Remand

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen*, 111 F. Supp. 3d at 263 (internal quotation marks omitted). However, remand for calculation of benefits is not appropriate when the record requires further development.  "In deciding whether a remand is the proper remedy, we have stated that where the

administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts*, 388 F.3d at 385.

In this case, the Court has determined that the matter should be remanded to the Commissioner for further development of the record. Therefore, an order for the calculation of benefits is not appropriate.

## IV.   <u>CONCLUSION</u>

For the reasons stated, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but his alternative motion to reverse and remand for a new hearing is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this decision.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

It is so ordered.

_____
*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge